**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| WILSON CAMILO GONZALEZ SAN JOSE,<br><br>     *Plaintiff*,<br><br>     v.<br><br>MARKWAYNE MULLIN, Secretary of Homeland Security, *et al.*,<br><br>     *Defendants*. | Civil Action No. 1:26-cv-01590 (CJN) |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Wilson Camilo Gonzalez San Jose is a Guatemalan national residing in the United States.  After entering removal proceedings, he applied for cancellation of removal on the ground that his deportation would result in "exceptional and extremely unusual hardship" to his disabled son, JPZ, who was nineteen at the time.  In 2024, an immigration court expressed its inclination to grant Gonzalez San Jose's request but could not issue a final order due to annual limits on cancellations of removal.  Gonzalez San Jose fears that JPZ (who is now almost 21) will soon age out of qualifying relative status and thus doom his efforts to cancel his removal.  He therefore moves for a preliminary injunction ordering immigration officials to consider JPZ's age fixed as of the date the immigration court heard the merits of Gonzalez San Jose's application.  For the reasons explained below, the Court is unable to grant such relief.

### I.      Background

The Immigration and Nationality Act grants the Attorney General discretion to cancel removal proceedings for certain nonpermanent residents if, assuming other requirements are met, "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent,

1

or child."  8 U.S.C. § 1229b(b)(1)(D).  As relevant here, the term "child" is definitionally limited to "an unmarried person under twenty-one years of age."  *Id.* § 1101(b)(1).  Congress has imposed a statutory cap barring the Attorney General from cancelling the removal of more than 4,000 aliens in any fiscal year.  *Id.* § 1229b(e)(1); *Wilkinson v. Garland*, 601 U.S. 209, 213 n.1 (2024).

Gonzalez San Jose is a Guatemalan national residing in the United States.  ECF No. 1 (Compl.) ¶ 11.  He is currently a respondent in removal proceedings before an immigration court in Orlando, Florida.  *Id.*  Gonzalez San Jose applied for cancellation of removal based on the "exceptional and extremely unusual hardship" that his removal would cause his son, "JPZ."  *Id.* ¶ 15; 8 U.S.C. § 1229b(b)(1)(D).  JPZ suffered physical trauma as an infant that left him with cerebral palsy, spastic quadriplegia, and several other serious disabilities.  *Id.* ¶ 16.  Gonzalez San Jose is JPZ's caretaker.  *Id.* ¶ 17.

In November 2024, following a hearing on the merits, an immigration judge told Gonzalez San Jose that he had "proved his relationship to a qualifying relative and met his burden of proof to show exceptional and extremely unusual hardship would result to his qualifying relative if [Gonzalez San Jose] were removed from the United States."  *Id.* ¶ 19.  But the immigration judge did not issue a final order cancelling Gonzalez San Jose's removal due to the statutory cap on cancelling more than 4,000 removals per year.  *Id.*; 8 U.S.C. § 1229b(e)(1).  The immigration judge explained that the court could not "issue a decision" immediately but that Gonzalez San Jose's case would "go on [the] waiting list" and that the court was "intending to grant the application" when it could.  ECF No. 13-1 at 1.  Gonzalez San Jose is waiting on a final decision.

In February 2026, Gonzalez San Jose filed a motion with the immigration court to expedite his cancellation of removal because of JPZ's critical health status and upcoming twenty-first birthday—which is five days away.  Compl. ¶ 20.  The immigration judge denied the motion on

2

the ground that Gonzalez San Jose "ha[d] not cited any binding precedent which permits the Court to grant [his] request." *Id.* ¶ 21; ECF No. 1-1 at 1. Gonzalez San Jose fears that, absent judicial intervention, upon turning twenty-one JPZ will no longer qualify as Gonzalez San Jose's "child" under 8 U.S.C. § 1229b(b)(1)(D), rendering Gonzalez San Jose ineligible for the cancellation of removal that the immigration judge told him in 2024 would be forthcoming. Compl. ¶ 23. Seeking to head off that possibility, Gonzalez San Jose initiated this action on May 9, 2026, asserting claims under the Declaratory Judgment Act and the Fifth Amendment. Compl. ¶¶ 47–48. He moved for a preliminary injunction one week later, seeking "an order declaring that his son's status as a 'qualifying relative' under 8 U.S.C. § 1229b(b)(1)(D) is tolled or frozen as of the merits adjudication date of November 18, 2024, and enjoining Defendants from denying [Gonzalez San Jose's] application for cancellation of removal on the basis of his son turning 21 on June 16, 2026." ECF No. 4 (Mot.) at 1.

## II.    Standard of Review

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To prevail, a party seeking preliminary injunctive relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). Where the federal government is the defendant, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The "first and most important factor" is whether the party seeking preliminary relief has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). To "establish[] a likelihood of success on the merits, [a plaintiff] must first demonstrate a likelihood of success in establishing jurisdiction," *Make The Rd. N.Y. v.*

3

*Wolf*, 962 F.3d 612, 623 (D.C. Cir. 2020), because "[t]he affirmative burden of showing a likelihood of success on the merits necessarily includes a likelihood of the court's *reaching* the merits." *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (citation modified).

### III.   Analysis

### A.   The Court Likely Lacks Jurisdiction Over Plaintiff's Claims

Gonzalez San Jose argues that he "is likely to succeed on his claim that a child's age for cancellation eligibility must be fixed at the time of merits adjudication based on the mounting circuit court precedent." Mot. at 3 (citing *Perez-Perez v. Bondi*, 160 F.4th 710 (6th Cir. 2025); *but see Yupangui-Yunga v. Bondi*, 157 F.4th 512 (2nd Cir. 2025); *Rangel-Fuentes v. Bondi*, 155 F.4th 1138 (10th Cir. 2025); *Diaz-Arellano v. U.S. Att'y Gen.*, 120 F.4th 722 (11th Cir. 2024). The Court can only consider that question, however, if Congress has provided authority to hear Gonzalez San Jose's underlying claim. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute.").

Gonzalez San Jose brings his suit under the Declaratory Judgment Act. 28 U.S.C. § 2201; Compl. ¶ 47.[1] But that Act "alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021); *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672 (1950). Rather, "declaratory jurisdiction [is] precluded by the jurisdiction-stripping provisions of the Immigration and Nationality Act." *Gonzales v. Barr*, No. 4:20-cv-10130, 2020 WL 7294570, at *2 (S.D. Fla. Dec. 10, 2020); *see also* 8 U.S.C. §1252(a)(5).

Specifically, Section 1252(b)(9), known as the INA's "zipper clause," provides:

---

[1] Gonzalez San Jose asserts a Fifth Amendment violation in his complaint but does not seek redress for that claim in his motion for a preliminary injunction. *See* Compl. ¶ 48; Mot. at 1. In any event, inclusion of the Fifth Amendment claim in the motion would not change the Court's analysis.

4

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under [8 U.S.C. §§ 1151–1385] shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, *or by any other provision of law* (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphases added).  That clause has a "broad[] reach," providing that all claims "that arise from immigration removal proceedings can only be brought through the petition for review process in federal courts of appeals."  *Nat'l Immigr. Project of Nat'l Laws. Guild v. Exec. Off. for Immigr. Rev.*, 456 F. Supp. 3d 16, 29 (D.D.C. 2020) (citation modified).  Section 1252(b)(9) thus channels "most claims that even relate to removal" into petitions for review, "ensur[ing] that petitioners get only one bite at the apple."  *Khalil v. President, United States*, 164 F.4th 259, 275 (3d Cir. 2026).  In other words, if a claim challenges "any part of the process by which [the plaintiff's] removability will be determined," *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion), district courts will generally lack jurisdiction over that claim.  *See Hines Immigr. L., PLLC v. Exec. Off. for Immigr. Rev.*, No. 1:26-cv-01018, 2026 WL 969020, at *8–10 (D.D.C. Apr. 10, 2026).

Gonzalez San Jose's claim falls squarely within the terms of Section 1252(b)(9).  He requests that the Court enter an order "enjoining Defendants from denying Plaintiff's application for cancellation of removal on the basis of his son turning 21 on June 16, 2026."  Mot. at 1.  That request arises directly out of a "proceeding brought to remove an alien from the United States."  8 U.S.C. § 1252(b)(9).  Gonzalez San Jose is currently in removal proceedings before the immigration court, and the legal question he asks this Court to resolve—the point at which a qualifying child must be under the age of twenty-one—is a central question in those proceedings.

Section 1252(b)(9) was enacted to prevent this type of piecemeal district court review. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 230 (2020) (explaining that the provision's purpose "is to 'consolidate judicial review of immigration proceedings into one action in the court of appeals'") (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)); *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007) ("[Section 1252(b)(9)] was designed to consolidate and channel review of all legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals.")

But Gonzalez San Jose is not left without recourse. In the event the immigration court issues a final order of removal, he can file a petition for review with the appropriate court of appeals. 8 U.S.C. § 1252(a)(5). And, on review of that petition, the reviewing court's "jurisdiction extends to immigration authorities' conclusion that an applicant for cancellation of removal hasn't satisfied § 1229b(b)(1)(D)'s exceptional-and-extremely-unusual-hardship standard." *Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1205 (11th Cir. 2025). Gonzalez San Jose also remains free to argue before the appropriate courts that the representations made to him at his 2024 immigration hearing estops immigration officials from withholding his promised cancellation of removal. *See, e.g.*, *Bartko v. Sec. & Exch. Comm'n*, 845 F.3d 1217, 1227 (D.C. Cir. 2017) ("[T]he unclean hands doctrine may apply where 'the public interest in ensuring that the Government can enforce the law free from estoppel [is] outweighed by the countervailing interest of citizens in some minimum standard of . . . reliability in their dealings with their Government.'") (quoting *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60–61 (1984)).

But those are questions for different days and different courts.  All that *this* Court can say is that, in this case and based on the present record, Gonzalez San Jose has not established a likelihood of success on the merits of his claim.[2]

### B.        Remaining Equitable Factors

The remaining preliminary injunction factors ask whether the movant will "suffer irreparable harm in the absence of preliminary relief," whether "the balance of equities tips in [the movant's] favor," and whether "an injunction is in the public interest."  *Winter*, 555 U.S. at 20. Those factors also do not weigh in favor of granting preliminary relief.

*Irreparable Harm.*    "[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter*, 555 U.S. at 22.  The Court of Appeals "has set a high standard for irreparable injury," requiring that the harm "must be both certain and great," "actual and not theoretical."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted).  The moving party must also show that "the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Id.* (citation modified).  Here, Gonzalez San Jose argues that absent preliminary relief, he will lose the cancellation of removal promised him by the immigration court and, consequently, his son will lose his primary caregiver.  Mot. at 3.  But that harm, while of course substantial, is not certain, imminent, or irreparable.  Gonzalez San Jose does not yet have a final order of removal and does not claim that such an order is impending.  And, in the event that

---

[2] Because 8 U.S.C. § 1252(b)(9) "strips [this] Court of jurisdiction, requiring [Gonzalez San Jose] to wait to raise his claims until he files a petition for review [] of a final order of removal," the Court "need not reach the [G]overnment's alternative argument that § 1252(g) also bars jurisdiction." *Khalil*, 164 F.4th at 273; *see* ECF No. 9 at 10–12.

he is ordered removed, he can appeal that decision (and its underlying resolution of issues regarding the date on which to fix his son's age) in federal court. *See* 8 U.S.C. § 1252(a)(1), (b).

*Balance of the Equities and Public Interest.* The two remaining factors—the balance of the equities and the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. Gonzalez San Jose frames his request as merely one "to preserve the status quo— his eligibility as it existed when the [immigration judge] made the findings of fact at the hearing on the merits of the case." Mot. at 3. The Government invokes "the public interest in having all aspects of removal proceedings considered in one proceeding." ECF No. 9 at 15. The latter interest outweighs the former here. When Congress determines the forum for judicial review, the Court's "obligation is to honor the legislative will as expressed" in the statutory scheme Congress created. *Am. Pub. Gas Ass'n v. Fed. Power Comm'n*, 555 F.2d 852, 857 (D.C. Cir. 1976). Interfering with the immigration court's proceedings at this stage would contravene the statutory framework Congress designed. *See Yamada v. Immigr. & Naturalization Serv.*, 384 F.2d 214, 218 (9th Cir. 1967) ("Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved, followed by a single petition in a court of appeals for judicial review both of the ultimate question of deportation and of all of the subsidiary questions upon which it might depend.").

### IV.    Conclusion

For the foregoing reasons, Gonzalez San Jose has failed to establish that he is entitled to preliminary relief in this action. A separate Order will issue contemporaneously.

DATE:  June 11, 2026

CARL J. NICHOLS
United States District Judge

8